IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Marrik Dish Company, LLC,                          Case No. 3:11cv2305

        Plaintiff

    v.                                                              **ORDER**

Wilkinson CGR Cahaba Lakes, LLC, et al.,

        Defendants

      This is a case in which Marrik Dish Company, LLC contracted to exclusively provide internet and cable services to Cahaba Lakes, an apartment community in Alabama then owned by JRC Hunters Pointe LLC. The apartment community's current owner, Wilkinson CGR Cahaba Lakes, LLC, now contests the exclusive nature of the contract and its applicability to Wilkinson Group, as a different owner.

      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

      Plaintiff contends that personal jurisdiction exists as to both defendants based on their alleged business transactions in Ohio, their alleged tortious conduct, and the forum and choice of law provisions in the Agreement. Defendants contest all of the bases for jurisdiction, primarily stemming from their stance that the Agreement is inapplicable to them. They correctly note that but for this Agreement, defendants have no other contact with SST and the state of Ohio.

      Pending is defendants' motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer. [Doc. 10]. For the following reasons, I grant the motion to transfer.

**BACKGROUND**

Plaintiff Marrik Dish Company, d/b/a SuiteSolutions Technologies (SST) is an Ohio company with its principal place of business in Toledo. Defendant Wilkinson CGR Cahaba Lakes (Wilkinson Group) is a Georgia company; defendant BroadBand Consulting Group (BBCG) is a Florida company with its principal place of business in Florida. Wilkinson is the owner of the property located at 1000 Hunt Cliff Road, Birmingham, AL 35242, also known as Cahaba Lakes Apartments (Cahaba Lakes).

SST installs, operates, and maintains satellite and antenna systems that deliver video and internet services to multiple-dwelling unit properties. Cahaba Lakes is such a property, with 801 residential units.

On June 22, 2007, SST entered into a Installation and Service Agreement with Cahaba Lakes' prior owner, JRC Hunters Pointe LLC (JRC), an Illinois company. Under the Agreement, JRC granted SST the exclusive right to install, operate, and maintain equipment on the property to deliver video service and internet service to property residents using owner writing infrastructure. [Doc. 1 - Exh. 1, p. 2-3]. Pursuant to the implementation of the Agreement, SST installed certain video equipment and internet equipment, necessary to provide the requisite services. The Agreement granted SST the exclusive use, access, and control of all equipment and wiring.

The Agreement also states that the rights and obligations under the Agreement, including the exclusivity provisions, "constitute covenants and restrictions running with the land" and bind "all future owners of the property or of any interest in the property." [Doc. 1 - Exh. 1, p. 3]. JRC was obligated to disclose the Agreement "to any successor-in-interest in the property." *Id.*

The initial term of the Agreement was for ten years, and was to renew automatically for successive two-year terms if not terminated.

On March 31, 2010, JRC granted a statutory warranty deed in lieu of foreclosure to Wilkinson Group. On August 29, 2011, JRC's President, Michael Pompizzi, gave Wilkinson Group a copy of the Agreement.

On September 29, 2011, Wilkinson Group closed on the property, and the Deed in Lieu was recorded with the Shelby County, Alabama Probate Court on September 30.

In early October, 2011, Wilkinson Group hired BBCG to negotiate with SST. BBCG's President, John Russo, informed SST that he believed Alabama law extinguished the restrictive covenant and SST's rights under the Agreement through the Deed in Lieu.

On October 21, 2011, Wilkinson Group's CEO, Phillip Deguire, wrote SST and asked that SST remove all its equipment from Cahaba Lakes by December 15, 2011.

On October 27, 2011, SST filed this action alleging three counts against Wilkinson Group and BBCG: 1) breach of covenant/breach of contract; 2) tortious interference with a contract; and 3) tortious interference with business relations. At the same time, SST filed a motion for a temporary restraining order and a separate motion for a preliminary injunction to stop Wilkinson Group and BBCG from "allowing, permitting, promoting, or distributing the internet and/or video services" of any of SST's competitors. [Doc. 3, 4]. I granted the TRO on October 27, 2011, for a period of ten days. [Doc. 8].

On November 8, 2011, defendants filed a motion to dismiss for lack or personal jurisdiction, or to transfer to the Northern District of Alabama. [Doc. 10].

### DISCUSSION

The Supreme Court has held that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malay. Int'l Shipping*

*Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks omitted); cited with approval in *Medical Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 390 n. 4 (6th Cir. 2008). The Court in *Sinochem* held that "[a] district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem*, *supra*, 549 U.S. at 432.

Although this court may have jurisdiction over the defendants, discussed *infra*, it is a close question, and I believe that transferring the case to the Northern District of Alabama is a better resolution than either keeping a case with questionable jurisdiction or dismissing it altogether.

### 1. Personal Jurisdiction

Since this court's subject matter jurisdiction is based on diversity of citizenship, the substantive law of Ohio governs the issue of personal jurisdiction. *Welsh v. Gibbs*, 631 F.2d 436, 440 (6th Cir. 1980).

In Ohio, personal jurisdiction is proper if: 1) the state long arm statute authorizes jurisdiction; and 2) the exercise of jurisdiction is consistent with the due process requirements of the United States Constitution. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

On a motion to dismiss, the plaintiff bears the burden of establishing a prima facie case with respect to both elements. *Nationwide Mut. Ins. Co. v. Tryg Int'l Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). When this court rules on a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff[.]" *CompuServe*, *supra*, 89 F.3d at 1262.

### A. Ohio's Long Arm Statute

>Ohio's law governing personal jurisdiction states that:
>
>(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>(1) Transacting any business in this state;
>
>...
>
>(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

O.R.C. § 2307.382.

Ohio courts have stated that the "bare wording of the statute" does not provide strong guidelines and the court must instead engage in "a case-by-case determination." *Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209 (Ohio App. 2005) (quoting *U.S. Sprint Commc'ns Co., Ltd. P'ships v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (Ohio 1994)).

SST first argues that defendants have transacted business in Ohio due to their email communications regarding the Agreement. SST cites to a number of cases for the proposition that "any business" - even, as in this case, a few emails denying a contractual obligation and tentatively proposing a new arrangement - is sufficient to grant jurisdiction under the statute.

The importance of the case-by-case determination is evident from the cases in which courts interpret Ohio's long arm statute. While the language in the cases SST cites to is quite broad, *see, e.g., Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (Ohio 1990) (finding that the term "transact" should be interpreted expansively and "is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion"), the actual circumstances in these cases show a far lengthier and involved course of dealing than the one in this case. *See id.* (holding that jurisdiction over a Georgia company

5

was proper where defendant held telephone negotiations and signed a lease agreement with plaintiff, an Ohio company); *see also Reynolds v. Int'l Amateur Athletic Federation*, 841 F.Supp. 1444, 1451 (S.D. Ohio 1992) (holding that jurisdiction over an international athletic organization was proper where defendant had previously made eligibility determinations and provided funding to Ohio athletes, including plaintiff, for several years before the events leading to the litigation); *Ricker, supra*, 828 N.E.2d at 209-10 (holding that jurisdiction over a Michigan company was proper where the defendant had initiated contact and solicited business from plaintiff, an Ohio company, and sent a year's worth of fees to plaintiff's Ohio office); *The Union Central Life Ins. Co. v. Andraos Capital Mgmt & Ins. Servs. Inc.*, 2010 WL 5093409, *1 (S.D. Ohio) (holding that jurisdiction over a California company was proper where the defendant had entered into a contract with an Ohio company, performed its obligations under the contract for over two years, and executed two promissory notes in favor of the plaintiff).

Conversely, in this case, dealing between plaintiff and defendants was non-existent prior to late September, just over a month before the start of this litigation. Communications revolved around defendants' belief that the Agreement did not apply to the Wilkinson Group. BBCG and Wilkinson Group both indicated that Wilkinson Group would be amenable to creating a non-exclusive agreement with SST, but the so-called "negotiations" mainly consisted of SST maintaining that Wilkinson Group was subject to the Agreement, and defendants maintaining that it is not. Even interpreting the transaction of "any business" broadly would not include defendants' actions.

The case of *PTG Logistics, LLC v. Bickel's Snack Foods, Inc.*, 196 F.Supp. 2d 593 (S.D. Ohio 2002) is instructive. In *PTG Logistics*, the plaintiff (an Ohio company) sued Bickel's Snack Foods and its parent company, Hanover Foods (both Pennsylvania companies). *Id.* at 596. Plaintiff

6

PTG had a five-year contract with Bickel's predecessor in interest, York Foods, for food transportation. *Id.* The contract included a forum selection and choice of law clause in which the parties to the Agreement submitted to the jurisdiction of the courts of Ohio. *Id.* at 596-97.

Before the end of the five-year term of the agreement, Bickel's purchased York and its assets, including York's rights to the remainder of a security deposit held with PTG. *Id.* at 597. Bickel's expressed a desire to renegotiate the contract, and asked for the return of the security deposit as a "good faith gesture," with the understanding that a new agreement would be reached. *Id.* Representatives of Hanover also attended a meeting with PTG and Bickel's, and expressed an interest in working with PTG in the future.

Bickel's continued to perform York's obligations, and exercise York's rights, under the contract for several months before negotiations broke down. Bickel's disavowed the agreement entirely and any obligations under it. *Id.* PTG then filed suit in Ohio for breach of contract and a number of other claims. *Id.* Both defendants moved to dismiss for lack of personal jurisdiction. *Id.*

The court found that it had jurisdiction over Bickel's, relying heavily on Bickel's actions in accepting services from and payments to "a company that it necessarily knew was based in Ohio." *Id.* at 599. In contrast, the court held that it did not have jurisdiction over Hanover:

> Hanover did not accept any services from PTG and did not make any payments to PTG. Hanover's only contacts with PTG were discussions regarding modification of the PTG/York Foods contract, including some discussions of PTG providing services for Hanover as well as [Bickel's]. However, these discussions took place in Pennsylvania and were extremely tentative. No contract between PTG and Hanover came out of them. Unlike [Bickel's], Hanover Foods did not have an ongoing business relationship with PTG and created no obligations in Ohio.

*Id.*

7

The relationship between SST and Wilkinson Group is more analogous to the relationship between PTG and Hanover, not PTG and Bickel's. Wilkinson Group did not continue the Agreement with SST, nor did it ever express a desire to do so. Wilkinson Group attempted to start new negotiations to create a new agreement, similar to Hanover. Even taking into account that inferences must be made in favor of plaintiff at this stage of litigation, defendants' actions cannot be seen as creating obligations or setting operations in motion in a way that would "have a realistic impact on the commerce of [the forum] state." *Id.* at 598-99 (citing *Southern Machine Co. v. Mohasco Industries*, 401 F.2d 374 (6th Cir. 1968)).

SST also argues that defendants' actions constituted tortious conduct sufficient to invoke ORC § 2307.382(6). SST alleges that defendants' actions have interfered with the 300+ contracts they have with individual residents of Cahaba Lakes. Defendants assert that because the Agreement does not bind them, they cannot be held responsible for this impact on plaintiff.

At this stage, however, I cannot "weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). SST has made out a prima facie case that defendants interfered with their contracts, and that they "must reasonably have been expected to do so." *Reynolds*, *supra*, 841 F.Supp at 1451. Accordingly, jurisdiction can be conferred on defendants in relation to their tort claim, pursuant to Ohio's long arm statute.

## B. Due Process Requirements

In addition to conforming to the requirements of the Ohio long arm statute, this court can exercise personal jurisdiction over parties only where doing so will comply with the requirements of due process under the Fourteenth Amendment. To meet those requirements, 1) the defendant must have minimum contacts with the forum state; and 2) exercise of personal jurisdiction must be

consistent with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). A defendant can be subject to either general or specific jurisdiction. *Nationwide*, *supra*, 91 F.3d at 793. SST does not argue that defendants are subject to general jurisdiction in Ohio, so my analysis will focus on specific jurisdiction.

Specific jurisdiction can "be premised on a single act of the defendant." *Id.* at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)). The Sixth Circuit has provided a three-part test to determine whether the exercise of specific personal jurisdiction is constitutional:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Nationwide, supra,* 91 F.3d at 793 (quoting *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)).

When looked at from the perspective of the tort claim, the due process requirements are more easily met. SST is an Ohio based company, and it is uncontroverted that defendants knew they were dealing with an Ohio company. SST has made allegations that defendants committed tortious interference with their business contracts; the above facts suffice to state that defendants knew their actions would cause harm in Ohio. *See Kehoe Component Sales*, *supra*, 2009 WL 2591757 at *6.

The second prong of the test would also be satisfied, as SST's tort claims arise from the alleged interference with their subscriber contracts.

The third requirement - reasonableness - would also likely be met. "When the first two criteria are met, an inference arises that the third criterion is also present and 'only the unusual case will not meet this third criterion.' " *Omega Cable & Communications Inc. v. Time Warner, Inc.*,

2006 WL 2077035, *4 (N.D. Ohio) (quoting *First Nat. Bank of Louisville v. J.W. Brewer Tire Co.*, 690 F.2d 1123, 1126 (6th Cir. 1982)).

Substantial problems arise, however, when looking at the contract claims. As discussed *supra*, the communications between SST and defendants did not create any kind of continuing obligation or contract between those parties. Even if the Agreement were applicable to defendant Wilkinson Group, the "mere existence of a contract" is insufficient to establish specific jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). Exercise of specific jurisdiction is premised on a belief that the defendants "purposely availed" themselves of a forum, and the contacts are not "random, fortuitous, or attenuated." *Id.* at 721-22.

In examining the communications between SST and defendants, it is clear that defendants did not seek out SST - they dealt with them solely because the previous owner of Cahaba Lakes had an agreement with them. Defendants did not initiate the contract with SST, they did not negotiate the Agreement, and there is no indication that defendants "sought . . . to create continuous and substantial consequences" in Ohio. *Id.* at 723.

The fact that SST is based in Ohio, and the economic effects of the actions alleged would be felt in this state is also insufficient when the "obligation [does] does not arise from a privilege the defendant[s] exercised in the forum state." *Id.* at 722. The only reason defendants have had contact with the state of Ohio is because SST is headquartered here, not out of any deeper desire to maintain a connection with the state of Ohio.

This court could potentially exercise a type of "pendent personal jurisdiction" over the contract claims, based on the probable jurisdiction over the tort claim. *See U.S. v. Botefuhr*, 309 F.3d 1263, 1272-74 (10th Cir. 2002) ("Pendent personal jurisdiction . . . exists when a court possesses

personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.").

To do so, however, would be inappropriate in this case. While this court might have jurisdiction over the tort claim, the resolution of that claim would ultimately depend on whether the Agreement binds the Wilkinson Group - the central issue for the contract claims, for which I have found this court lacks personal jurisdiction.

### 2. Transfer under 28 U.S.C. § 1406(a)

This court has the power to transfer cases pursuant to 28 U.S.C. § 1406(a) which states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Such transfer is proper even if a court lacks personal jurisdiction over the defendants. *See Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962). Section 1406(a) is the proper mechanism to transfer the case regardless of whether venue is proper; the Sixth Circuit has held that the statutory description of venue laid in a "wrong division of district" can refer to any "obstacle to an expeditious and orderly adjudication on the merits." *Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969); *see also In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255-56 (4th Cir. 2002); *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983). In this case, the obstacle is the questionable exercise of personal jurisdiction over the defendants.

The interests of justice support transfer to the Northern District of Alabama. Both parties agree that Alabama law governs the issue of whether the Agreement created a restrictive covenant that runs with the land. *See Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964) ("There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.") (internal quotation marks omitted). The property - the Cahaba Lakes apartments - is in Alabama. Defendants assert that they will need testimony from the residents of Cahaba Lakes regarding SST's performance of the Agreement. Those residents are in Alabama.

Most important is the exercise of personal jurisdiction. There does not appear to be such a problem of jurisdiction in Alabama, while there is a substantial question here. Rather than dismiss the case for lack of personal jurisdiction, I find it in the interests of justice to transfer it to the Northern District of Alabama.

## CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion for transfer to the Northern District of Alabama is granted.

So ordered.

s/James G. Carr
Sr. United States District Judge